**UNITED STATES, Appellee**

v.

**Private First Class Edwin R. CARLSON, 502–90–2954, United States Army, Appellant.**

**SPCM 21012.**

U.S. Army Court of Military Review.

6 Feb. 1986.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Rita R. Carroll, JAGC, Captain J. Andrew Jackson, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Michael W. Hoadley, JAGC (on brief).

Before RABY, CARMICHAEL and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

ROBBLEE, Judge:

On 16 October 1984, in a trial before a military judge sitting as a special court-martial, appellant, pursuant to his pleas, was convicted of violating a lawful general order by wrongfully consuming alcoholic beverages, and wrongfully appropriating a military vehicle, in violation of Articles 92 and 121, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 892 and 921 (1982), respectively. He was sentenced to a bad-conduct discharge, two months confinement, forfeiture of $397.00 pay per month for two months, and reduction to Private E–1. The convening authority approved the sentence.

Before this court, appellant asserts that he was denied due process and fundamental fairness as a result of unlawful

command influence exerted on prospective defense character witnesses by a noncommissioned officer who was their superior in grade and in their chain of command.[1] Appellant requests that we set aside the sentence and authorize a rehearing. We decline to do so.

## I. Facts

At trial, defense counsel moved to dismiss all charges and specifications on the ground now claimed as error before this court. In support of the motion, defense counsel called two witnesses, Specialist Five (SP5) Wood and Staff Sergeant (SSG) Jensen. Each testified that Sergeant First Class (SFC) Tillmon, their platoon sergeant and that of appellant, had made remarks to them which led them to believe that testifying for appellant might have adverse career consequences.[2]

The government called two witnesses, SFC Tillmon and First Sergeant (1SG) Dickey. Sergeant First Class Tillmon confirmed that he had spoken with both SP5 Wood and SSG Jensen; however, he indicated that the conversation had not gone beyond telling them that they were both required to appear in court since they had been notified that they were to be called as defense witnesses. He flatly denied making any other statements attributed to him by SP5 Wood and SSG Jensen and added that he regarded both of them as untruthful.

First Sergeant Dickey testified that SP5 Wood had asked him if he had to testify on appellant's behalf indicating, for unspecified reasons, that doing so would make him feel "uncomfortable back in the company". In response to SP5 Wood's concern, 1SG Dickey advised him to tell the truth to avoid any problem. We find as fact that SP5 Wood sought 1SG Dickey's guidance after he had spoken with SFC Tillmon.

After trial and defense counsel presented their evidence on the motion to dismiss, the military judge, *sua sponte*, called Sergeant (SGT) Tracy as a witness. Although SSG Jensen had testified that SGT Tracy had been present during his conversation with SFC Tillmon, SGT Tracy could not recall such a conversation. Sergeant Tracy testified, however, that he had asked SFC Tillmon what he should do if he were called as a witness for the appellant or for the government, indicating that both trial and defense counsel had interviewed him. Sergeant First Class Tillmon told him "you just go up and do what you feel is right". While he characterized SFC Tillmon's response as not answering his questions, SGT Tracy testified that he felt no fear of recrimination in the company if he did testify.

Following argument by counsel, the military judge denied the motion, ruling as follows:

MJ: Regarding the defense motion, the appellate courts, and of course this court would recognize that allegations of improper influence impose a

---

1. Appellant asserts his claim of error under the Due Process Clause of the Fifth Amendment, United States Constitution [hereinafter Due Process Clause of the Fifth Amendment], and Article 37, UCMJ, 10 U.S.C. § 837 (1982). We conclude that the prohibition against unlawful command influence contained in Article 37 extends to noncommissioned officers. *United States v. Olson*, 29 C.M.R. 102, 104 (C.M.A.1960) (Article 37 extends to "all unlawful command influence exerted by *any* military superior." (Emphasis in original.) Moreover, we note that Article 37 prohibits unlawful command influence "on actual or prospective witnesses with respect to the content of their testimony." *United States v. Treakle*, 18 M.J. 646, 657 (A.C.M.R.1984) (en banc), *pet. granted*, 20 M.J. 131 (C.M.A.1985).

2. Specialist Five Wood testified that SFC Tillmon told him to "[testify] how you want to,

throw away your career how you want to" and "something [in the nature] of whatever you do, make sure of what you are doing, it could be a turning point in your career, it could effect what happens to you." Other testimony offered by SP5 Wood indicated that he felt pressured about testifying, that he was scared, that it was "very possible" that he might have a memory lapse at trial, and that he felt that testifying for appellant might adversely impact on his chances for promotion to E–6 (He had earlier been removed from the E–6 list for being overweight).

SSG Jensen testified that he was concerned about testifying for appellant because Sergeant First Class Tillmon had told him, "you don't really know what you're doing and just watch yourself."

significant threat to the operation of the military justice system, thus there is a requirement for the government to show by *clear and convincing evidence* that the accused has not been prejudiced by such improper influence. In this case the evidence is contradictory, but I could easily tell through their demeanor that Specialist Wood and Sergeant Jensen became more afraid and concerned about testifying at this trial after being formally notified of their required presence at trial. *On the other hand they do admit that the bottom line told to them was to do what they felt was right, and to assure that they were truthful in their testimony. Both have said that they have not changed their opinions regarding the accused or changed their testimony based on any purported conversation they had with [SFC] Tillmon, and both have expressed their intentions to testify truthfully. Thus, it cannot be said that these individuals were influenced to withhold testimony or to testify less than honestly.* Therefore, the defense motion is denied. However, to insure that no unlawful influence has been exerted on any witness in this trial with regards to testifying less than favorably concerning the accused, in order to protect his right to a fair trial I now rule that the government may not present any testimonial evidence either on direct or cross-examination of any witness regarding the accused's potential for rehabilitation or for further military service. In essence, I find that no actual improper influence was exerted in this case, but at the same time to avoid even the appearance of impropriety I have sought to safeguard the accused's right to a fair trial by being overly cautious in this matter, since it is a matter of great concern to the military justice system.

(Emphasis supplied).

Thereafter following the entry of guilty pleas, the military judge conducted a probing inquiry into appellant's pleas of guilty and entered findings of guilty against appellant. In the presentencing phase of the trial, appellant made an unsworn statement and called SSG Jensen and SGT Robertson as character witnesses. Prior to sentencing, the military judge, *sua sponte*, called SP5 Wood and ascertained that he remained willing to testify truthfully, that his testimony had not changed, and that he felt neither SFC Tillmon nor 1SG Dickey had tried to change his testimony. Offered a further opportunity to call SP5 Wood as a witness, trial defense counsel elected not to do so.

## II. Analysis Under the Analytical Model in *United States v. Cruz* [3]

■■■ "[A] case arrives at this court for review with a presumption of regularity". *United States v. Cruz,* 20 M.J. 873, 885 (A.C.M.R.1985) (en banc). As a general proposition the presumption of regularity is vitiated when an appellant "produce[s] sufficient evidence of an error affecting the validity of the findings or sentence in his case to shift the burden of persuasion to the government." *Id.* More specifically, when an appellant alleges that command influence affected his trial, whether first on appeal or first at trial, he must produce evidence sufficient "in the totality of the circumstances, ... to allow a reasonable person to conclude that *actual unlawful command influence affected his case.*"

---

3. *United States v. Cruz,* 20 M.J. 873 (A.C.M.R. 1985) (en banc). Analysis may proceed by sequentially applying the *Cruz* analytical model as a test for specific prejudice incident to findings of actual command influence, or in much more limited circumstances, nonsequentially by initiating analysis on the appearance side of the model when the appearance that unlawful command influence affected the trial is "so aggravated and ineradicable that no remedy short of reversal of the findings and sentence will convince the public that the accused has been fairly tried...." *Id.* at 892. We elect to test for specific prejudice sequentially in the instant circumstances.

*Id.* at 886 (emphasis added). In this regard, a witness who has been subjected to pressure not to testify or to alter prospective testimony in violation of Article 37, UCMJ, is presumed to have succumbed to the same, absent government rebuttal by clear and positive evidence. *United States v. Treakle*, 18 M.J. at 657. In the event that an appellant thus establishes that actual unlawful command influence affected his case, a rebuttable presumption of prejudice arises and the burden of persuasion to show a lack of prejudice by clear and positive evidence shifts to the government. *United States v. Rosser*, 6 M.J. 267, 272 (C.M.A.1979); *United States v. Adamiak*, 15 C.M.R. 412, 418 (C.M.A.1954); *United States v. Cruz*, 20 M.J. 887, 888.

▮▮▮ The testimony of SP5 Wood and SSG Jensen, as well as the finding of the military judge relative thereto,[4] convinces us that both were subjected to unlawful pressure regarding the content of their testimony. In particular, we conclude that credible evidence exists that SP5 Wood and SSG Jensen reasonably understood that their platoon sergeant told them that their careers would be adversely affected if they testified for appellant. Thus, we must presume that their testimony was skewed by impermissible influence and further examine the record for clear and positive evidence to the contrary. *See United States v. Treakle*, 18 M.J. at 657. In this regard,

we are mindful that testimony denying the impact of unlawful pressure not to testify, without more,[5] is ordinarily insufficient to conclude that an improper effect has not resulted. *United States v. Zagar*, 18 C.M.R. 34, 38 (C.M.A.1955); *United States v. Adamiak*, 15 C.M.R. at 419; *United States v. Treakle*, 18 M.J. at 658. As the military judge's ruling on appellant's motion was predicated on the testimony of SP5 Wood and SSG Jensen alone, each insisting that his testimony had not been influenced and otherwise not meriting special weight, we conclude that the presumption of improperly influenced testimony was not rebutted by clear and positive evidence. Accordingly, we find: 1) that the military judge's ruling on appellant's motion was in error;[6] and 2) that actual command influence affected appellant's trial.

▮▮▮ Notwithstanding our finding that actual unlawful command influence affected appellant's trial, we are persuaded that the resulting presumption of prejudice[7] was rebutted by clear and positive evidence[8] of record. In this regard we note that the trial record reveals that appellant was not denied the benefit of favorable character testimony during the sentencing phase of his trial. SSG Jensen provided favorable character testimony on the basis of appellant's duty performance in a seventy day period in close proximity to the date of trial. Thus, his platoon sergeant's

---

4. In ruling on the defense motion to dismiss, the military judge found pertinently that [h]e "could easily tell through their demeanor that Specialist Wood and Sergeant Jensen became more afraid and concerned about testifying at ... trial after being formally notified of their required presence at trial."

5. In our view, however, such testimony may be considered as a single factor among many which might demonstrate prejudice or unlawful command influence. *Cf. Smith v. Phillips*, 455 U.S. 209, 217 n. 7, 102 S.Ct. 940, 946 n. 7, 71 L.Ed.2d 78 (1982) ("[S]urely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.").

6. In circumstances when command influence against prospective defense character witnesses is alleged, it may be appropriate to defer ruling

on a pretrial motion to dismiss on the grounds of unlawful command influence until the presentencing phase of the trial has been concluded.

7. The presumption is that the two prospective witnesses would skew their testimony in a manner adverse to the appellant's interests when called to testify. *United States v. Cruz*, 20 M.J. at 887, *citing United States v. Treakle*, 18 M.J. at 657. *See also United States v. Johnson*, 34 C.M.R. 328, 331 (C.M.A.1964) ("The appearance, or the existence, of command influence provides a presumption of prejudice; but the presumption is rebuttable.").

8. We note that the military judge expressed this test as a "clear and convincing" evidence test. In our view, no error resulted because we are unable to ascertain a material difference between the two.

veiled threats were not sufficient to preclude him from doing his legal and moral duty. Further, SGT Robertson, a character witness not influenced by any unlawful command influence, provided favorable character testimony which we view as substantially more significant than that of SSG Jensen because it was based on a supervisory association of two years duration, ending just six months before trial. Both testified that appellant had potential for further service, one of the strongest favorable recommendations that can be made by a military witness in behalf of an accused during presentencing proceedings. Also, appellant was not denied SP5 Wood's testimony; rather, appellant chose not to call him as a witness after being given a full and fair opportunity to do so. Finally, while the military judge's efforts to fashion remedial measures in this case were not sufficient to guarantee that unaltered favorable testimony could be obtained from witnesses already chilled by unlawful command influence, *United States v. Southers*, 18 M.J. 795, 797 (A.C.M.R.1984), these measures did protect the favorable presentencing testimony actually presented in appellant's behalf from any potential rebuttal. Accordingly, we find that the presumption of prejudice which arose incident to our finding of actual unlawful command influence in this case, was rebutted by clear and positive evidence; that is, there is *no fair risk* of prejudice under the circumstances of this case. *United States v. Cruz*, 20 M.J. at 881 n.9, and cases cited therein.

Notwithstanding our determination that appellant was not prejudiced by unlawful command influence, we must also examine whether the appearance of unlawful command influence merits relief.

It is axiomatic that the best way to dispel the appearance of evil is to publish the truth about the situation.... [T]he appearance of unlawful command influence will normally become relevant only in the absence of actual unlawful command influence because the process of publicly determining whether the appellant has been prejudiced by actual command influence, and remedying it if it has, will normally remove the appearance of unlawful command influence as well.

*United States v. Cruz*, 20 M.J. at 890, 891. We are satisfied by the evidence contained in the record, our own legal analysis of the facts and circumstances of this case, as well as our military experience, that "a substantial majority of the reasonable members of the public," *id.* at 883, would not conclude that an appearance of unlawful command influence affected the sentencing proceedings. Because we have thus determined that appellant suffered no *fair risk* of prejudice as a result of the actual unlawful command influence exerted in his case, and otherwise believe that he received a fair trial,[9] we deem it unnecessary to further discuss appellant's claim of error as it relates to the Due Process Clause of the Fifth Amendment.[10]

We have considered the issue personally raised by the appellant and find it to be without merit. *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

The findings of guilty and the sentence are affirmed.

Senior Judge RABY concurs.

Judge CARMICHAEL took no part in the decision of this case.

---

9. We are satisfied that appellant knowingly, voluntarily, and intelligently pled guilty. *See United States v. Care*, 40 C.M.R. 247 (C.M.A.1969).

10. Assuming *arguendo* that the conduct of SFC Tillmon constituted a violation of Due Process, we are convinced beyond a reasonable doubt, based on the evidence of record, that any error to appellant was harmless.