**UNITED STATES, Appellee,**

v.

**Captain (0–3) Reginald B. LOWERY, 557–04–3963, United States Army, Appellant.**

**CM 447661.**

U.S. Army Court of Military Review.

21 March 1986.

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Major Jerry W. Peace, JAGC, Captain Clayton A. Aarons, JAGC (on brief).

For Appellee: Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC, Captain Jan M. Wamsted, JAGC (on brief).

Before RABY, CARMICHAEL and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

RABY, Senior Judge:

Appellant pled guilty to and was convicted of five specifications of fraternization and one specification of adultery, in violation of Article 134, Uniform Code of Military Justice [hereinafter referred to as UCMJ or Code], 10 U.S.C. § 934 (1982), and of one specification of maltreatment of a subordinate by sexual harassment, in violation of Article 93, UCMJ, 10 U.S.C. § 893 (1982).

Appellant asserts that the evidence is legally insufficient to support the finding of guilty of amended Specification 6 of Charge I [fraternization with Private (PVT) M.].[1] Specifically, appellant asserts that because PVT M. was not "in a training status under [appellant's] command" at the time the offense occurred, as originally averred in Specification 6, that only private fornication occurred between appellant and PVT M., and that such private fornication does not constitute a criminal violation under either Article 133 or 134, UCMJ, 10 U.S.C. §§ 933 and 934 (1982). Appellant cites *United States v. Johanns*, 20 M.J. 155 (C.M.A.1985), in support of his view that "even for an 'officer, private fornication in the absence of some other aggravating circumstances' was not an offense under Arti-

---

1. This specification contains the following pertinent averments:

    Specification 6: In that [appellant] ... did, at the Sands Motel, Eatontown, New Jersey, on or about 20 August 1984, knowingly fraternize with Private [M.] ... a female enlisted person formerly in a training status under his command, on terms of military equality, to-wit: wrongfully and unlawfully engage in sexual intercourse with Private [M.], in violation of the custom of the United States Army that officers should not fraternize with enlisted persons on terms of military equality.

cle 133 and 134." *See United States v. Johanns*, 20 M.J. at 159.

The United States Court of Military Appeals, in *United States v. Jefferson*, 21 M.J. 203, 204 (C.M.A.1986), stated, "[w]e need not determine in this appeal whether 'fraternization' is a punishable offense in the Army ... because appellant's adultery under the circumstances alleged constituted conduct unbecoming an officer." Fraternization between an officer and an enlisted soldier is a criminal offense in the Army. W. Winthrop, *Military Law and Precedents* 711–712, 716 and n. 44 (2d ed., 1920 reprint); *see United States v. Jefferson*, 14 M.J. 806 (A.C.M.R.1982), *aff'd in part and rev'd in part*, 21 M.J. 203 (C.M.A.1986); *cf. United States v. Callaway*, 21 M.J. 770, 776 (A.C.M.R.1986) ("[F]raternization has long been recognized as an offense."). Further, the appellant's criminal act in question occurred on 20 August 1984, several weeks after the effective date of the new Manual for Courts-Martial, United States, 1984 [hereinafter referred to as Manual]. In this Manual, the President for the first time prescribed by Presidential Executive Order the elements of the offense of fraternization. Manual, part IV, para. 83. These elements *do not* require that the enlisted person with whom the officer fraternized be "under the command of" the offending officer. Rather, to establish the offense of fraternization, under the provisions of Article 134 of the UCMJ:

> [t]he acts and circumstances must be such as to lead a reasonable person *experienced in the problems of military leadership* to conclude that the good order and discipline of the armed forces has been prejudiced by their tendency to compromise the respect of enlisted persons for the professionalism, integrity, and obligations of an officer.

Manual, part IV, para. 83 (emphasis added).

In prescribing the offense of fraternization in the Armed Forces, the President clearly recognized and ratified the prevailing military custom that officers shall *not* fraternize with enlisted persons on terms of military equality. This custom has long existed in the Army, but assuming *arguendo* that it had not, it was instantaneously created on 1 August 1984 when the new Manual became effective. It is, in our opinion, within the inherent constitutional authority of the President as Commander in Chief either to condone by ratification an existing course of customary, lawful military conduct, or to mandate the immediate and consistent performance of a future course of lawful military conduct. In either event the result would be the same— Presidential establishment of Armed Forces custom. U.S. Const. art. II, § 2, cl. 1; *cf. United States v. Eliason*, 41 U.S. (16 Pet.) 291, 300–301, 10 L.Ed. 968 (1842) ("The power of the executive to establish rules and regulations for the government of the army, is undoubted.... The power to establish implies, necessarily, the power to modify or repeal, or to create anew."). However, any rules promulgated by the President attempting to effect a clarification of the scope of the congressionally enacted general articles (Articles 133 and 134) would have to be consistent with the statutory provisions of the UCMJ. *United States v. Woods*, 21 M.J. 856, 869–70 (A.C.M.R.1986); *accord United States v. Symonds*, 120 U.S. 46, 49, 7 S.Ct. 411, 412, 30 L.Ed. 557, 22 Ct.Cl. 481 (1887). We find that the President's actions in promulgating a fraternization specification under Article 134 was not inconsistent with the UCMJ, as enacted by Congress, and that the President's actions served to give appellant, and all others similarly situated, "fair notice" that Article 134 condemned, as criminal, fraternization between an officer and an enlisted person. This Manual provision also would constitute a permissible narrowing of the otherwise "very broad reach of the literal language" of the general Articles 133 and 134. *See Parker v. Levy*, 417 U.S. 733, 754–755, 94 S.Ct. 2547, 2560–2561, 41 L.Ed.2d 439 (1974).[2,3]

---

**2.** We believe that appellant clearly was on notice, even before promulgation of the 1984 Manual, that both his fraternization and his adulterous course of criminal misconduct with female

■ Since the President properly exercised his constitutional authority in promulgating the model fraternization specification found in the Manual, part IV, para. 83, we will first compare the specification with which appellant was charged with the model specification found in the Manual to determine if the specification states an offense. We find that it does. We further

enlisted soldiers constituted crimes. *See, e.g., United States v. Moultak,* 21 M.J. 822, 832 (N.M. C.M.R.1985). His pattern of immoral conduct in this case, when viewed under the totality of the circumstances, clearly was so aggravated as to negate even the remotest possibility that appellant was unaware of the criminality of his conduct with any of the enlisted women concerned.

3. Averments of maltreatment and fraternization frequently include acts which could be charged as one or more other offenses under the Code, either under a specific or a general article of the UCMJ (for example, indecent assault, lewd acts, indecent or obscene language to a female, threat communication, adultery, sodomy, solicitation, indecent exposure, etc.). Other acts of fraternization or maltreatment by sexual harassment may be more subtle and not subject to any alternate form of charging. These later acts are no less detrimental to the maintenance of a well-disciplined military unit merely because they do not violate another punitive article of the Code. Through proper command enforcement of the law prohibiting an officer's sexual harassment of and fraternization with enlisted subordinates, the Army signals its continuous commitment to protect its enlisted soldiers, both male and female, from the sexual misconduct of such criminally errant officers; the Army also protects itself from the corrosive effect that such misconduct has upon unit morale, cohesion, and discipline. Further, we believe the pertinent lessons sadly learned from military history have shown that the old adage "familiarity breeds contempt" is more than a trite saying, and is grounded, in part, upon the fact that once published, fraternization with or sexual harassment of subordinates has just as corrosive an effect upon a command whether the subordinate is the willing or unwilling recipient of the officer's criminal misconduct. Whether the offender in a given instance should be subjected to administrative or judicial sanction is a matter within the sound discretion of commanders. After careful consideration we are not inclined to tamper with the legitimate executive determination of the Commander in Chief which provides due notice to all persons subject to the Code that fraternization is a criminal offense under Article, 134, UCMJ.

find that even when the averred specification is viewed independently of the President's promulgated fraternization specification, the specification on its face states both the specific Article 134 crime of fraternization and the more generic Article 134 crime of "wrongful and unlawful" service discrediting conduct or conduct prejudicial to good order and discipline.[4]

4. In our view, it has long been established in the United States Army that the only enlisted person with whom a married officer may lawfully engage in "private" sexual intercourse would be his or her spouse. Sexual intercourse with an enlisted person not the married officer's spouse constitutes both adultery and fraternization. Whether an officer who commits such crimes will be subjected to judicial or administrative proceedings and, if the former procedure is selected, just how he will be charged, is a matter within the sound discretion of command; however, certain meaningful guidelines are provided to commanders in Army Regulation 600–20, Personnel-General: Army Command Policy and Procedures, para. 5–7 (I05 26 Aug. 1985), and in Headquarters Department of the Army Letter [hereinafter referred to as HQDA Ltr] 600–84–2, Subject: Fraternization and Regulatory Policy Regarding Relationships Between Members of Different Ranks, dated 23 Nov. 1984. HQDA Ltr 600–84–2, in part, states:

This letter clarifies existing Army policy on fraternization and relationships between members of different ranks. The 1984 Manual for Courts-Martial describes a specific offense of "fraternization" under Article 134, UCMJ, for certain officer-enlisted relationships. From now on, the term "fraternization" should be used only to refer to this criminal offense....

\* \* \* \* \* \*

A forthcoming interim change to AR 600–20, paragraph 5–7*f*, will indicate that the criminal offense of fraternization, as set out in the Manual for Courts-Martial, is not governed by AR 600–20.

We believe, based on our years of military experience, that once a so-called act of "private fornication" between a married officer and an enlisted person (not the officer's spouse) becomes a matter of knowledge within a command or other military community, it is just as prejudicial to good order and discipline, just as service discrediting, just as detrimental to unit cohesiveness, and just as deleterious to respect for lawful military authority as if the criminal act initially had been committed within the shadow of the command's flagpole. The degree of seriousness which a given act will have, of course, normally will depend on the totality of the circumstances, but some offenses, like the

In this case, at the time the act of fraternization in question occurred, PVT M. was no longer a member of appellant's command; however, we find that had it not been for the superior-subordinate relationship that had existed between appellant and PVT M., she would not have gone into appellant's office "to say goodbye" just after she had "finished signing out" from appellant's company. In fact, it was not only on post but inside appellant's office where appellant (who moments earlier had been PVT M.'s commander) agreed to come to the off-post motel room shared by PVT M. and two other females "for a drink."[5]

Assuming with substantial reservation that the guidance contained in *United States v. Johanns*, 20 M.J. 155 (C.M.A. 1985) (private fornication between an officer and an enlisted person is not an offense under Article 133 and 134 absent some other aggravating circumstances) is still viable concerning offenses of fraternization by private fornication committed after 1 August 1984, we find that such aggravation exists in this case.[6] Accordingly, we find that the assignment of error is without merit.[7]

Considering the posture of the entire record, including all matters in extenuation, mitigation, and aggravation (particularly the aggravating evidence concerning how the appellant misused his military position and sexually harassed certain of the enlisted female soldiers with whom he frater-

nized), we find that the sentence in this case clearly is appropriate.

The findings of guilty and the sentence are affirmed.

Judge CARMICHAEL and Judge ROBBLEE concur.

---

ones in the case at bar, speak for themselves in terms of their severe adverse effect on the Armed Forces and cannot be condoned.

5. Reviewing the record in its entirety we also find that appellant was married to a woman named Sharon at the time of his fraternization with PVT M. and that PVT M. was not his wife. This fact constitutes an additional matter in aggravation even though appellant was not charged with the offense of adultery with PVT M.

6. In *United States v. Van Steenwyk*, 21 M.J. 795, 808 n. 10 (N.M.C.M.R.1985), Judge Mitchell astutely observes that:

Relationships in which sexual relations are involved are emotional and often quite volatile regardless of whether officer, enlisted or a mixture of personnel are involved. Such relationships involve illogical actions and think-

ing, envy, jealousy and *perceptions of favoritism and advantage* which are only magnified when one of the persons involved in the relationship is an officer.

(Emphasis added.) We hasten to add that the degree of problem magnification clearly is multiplied when one of the parties to an officer-subordinate sexual relationship is married. We believe that an officer-subordinate sexual relationship, especially where one of the parties thereto is married, provides its own aggravation.

7. We find that appellant's pleas of guilty to all the offenses of which he was found guilty were provident; consequently, we find that the evidence was not legally insufficient as asserted by appellant. For the reasons discussed above, we also find that Specification 6 of Charge I stated the criminal offense of fraternization under Article 134, UCMJ.