DECISION
MURDOCK, Judge:
This case took place at a small bomb scoring site where the victim, a young female airman, had reported for her first duty assignment just six weeks before. One evening the victim and her boyfriend left the dining hall and went to the boyfriend’s dormitory room where they talked and had sexual intercourse. After some time had passed, the boyfriend decided to go jogging. This angered the victim. She went to her room for a short time and then went to the Noncommissioned Officers’ Club where she talked and circulated. Eventually, she fell into conversation with the appellant whom she had never met. After a time, he suggested they find a better place to talk. They drove to his work site, the base power production plant, located in a shop-style building in a remote part of the base. The building is surrounded by a chain link fence with a locked gate. The appellant showed the victim around the shop and they talked and drank some beer. Before the appellant returned the victim to the dormitory area four hours later, he had humiliated, threatened, sodomized, and raped her.
Based on these events, the appellant was convicted, contrary to his pleas, of rape, sodomy, and adultery. In a bench trial, he was convicted and sentenced to a dishonorable discharge, confinement at hard labor for ten years, and reduction to airman basic. The convening authority disapproved the finding of guilty of adultery but approved the remaining charges and the sentence. Appellant has asserted a number of errors.
I
First, the appellant asserts that the rape and sodomy were multiplicious for sentencing purposes. We disagree. The events which led to these charges occurred while the victim was being held prisoner for about four hours. At least twice during this long period, the appellant committed cunnilingus on the victim and at least once he forced her to accept his penis in her mouth. Finally, during the last few minutes of this captivity, he raped her. Sodomy has frequently been held to be a distinct offense from other sex offenses such as rape and indecent liberties. United States v. Burns, 25 C.M.R. 791 (A.F.B.R.1957); United States v. Cox, 18 M.J. 72 (C.M.A.1984). Sodomy and rape involve different elements and violate different societal norms. It was proper for the judge to consider them separate for sentencing purposes.
The appellant next asserts that the evidence of the victim’s lack of consent is insufficient to support a finding of guilt of rape and sodomy. After hearing all the evidence and observing the witnesses, the victim, and the accused, the judge was convinced beyond a reasonable doubt that the victim did not consent to either the intercourse or the sodomy. So are we.
The appellant further argues that it is unconstitutional to punish sodomy which occurs in private between consenting adults as a violation of Article 125, U.C. M.J., 10 U.S.C. § 925. This argument is without merit in this case where the victim did not consent to the sodomy.
II
During trial preparation, the trial counsel discovered that one of the court members was needed as a government witness. It was also discovered that another court member had dated this potential witness for the past three years. The trial counsel recommended that the convening authority replace both these court members.[1] The *503 military judge and all counsel were aware of the recommendation for substitution when the first Article 39a, U.C.M.J., 10 U.S.C. § 839(a), session was held. Because of this pending substitution, the judge deferred the accused’s election to proceed with judge alone or with members until the final panel had been selected by the convening authority. When the final panel was selected and the names were made known to all trial participants, the appellant elected to be tried by judge alone.
The appellant now asserts that this procedure denied him of the right to voir dire the court members, and that by substituting court members, the convening authority was disqualified from taking action in this case. We see no merit in either assertion.
While it is proper to challenge the process by which court members are selected, the opportunity to challenge arises at trial. Paragraph 62ci, MCM, 1969 (rev). We can see no logical basis for examining those officers who are considered and not chosen by the convening authority, unless there is some reason to believe members have been relieved because of some impermissible motive on the part of the convening authority. In the present case, the defense counsel stated that she had no reason to believe there was any improper motive in removing the members. We hold there was no right to voir dire those members who were relieved.[2] The military judge did not in any way limit the opportunity for either side to challenge the court members. Rather, it was the appellant’s election to proceed with judge alone, after the identity of all the court members was finally known, that made voir dire unnecessary.
We also see no merit in the assertion that the convening authority was disqualified to act on this case because of this substitution of court members. Selection and substitution of court members are inherent responsibilities of a convening authority, as are appropriate post trial review and action. Paragraphs 36, 37 and 84, MCM, 1969 (rev).
Ill
Appellant asserts that he was denied effective post-trial assistance of counsel and was prejudiced by the Staff Judge Advocate’s refusal to inquire into the appellant’s expressed lack of continued confidence in his trial defense counsel. This claim is based on a statement in a letter the appellant wrote to the convening authority after trial in which he requested clemency and stated he had not received a fair trial because his counsel did not pursue some “areas that were very important to my defense”.[3]
The defense has cited several older cases to support their assertion that a dissatisfaction such as the appellant’s mandates returning the case to another convening authority to determine whether the appellant actually lacks confidence in his attorney and desires another attorney to rep *504 resent him in post trial matters.[4] We believe a better course is to apply the more recently articulated rules on effectiveness of counsel in general. An accused is entitled to be represented by effective counsel throughout the trial proceedings. United States v. Jefferson, 13 M.J. 1 (C.M.A.1982). Obviously, this right extends to post trial representation. The United States Supreme Court recently stated the standards for measuring the effectiveness of counsel in Strickland v. Washington, — U.S. -, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
See also United States v. Carlson, ACM 24356 (A.F.C.M.R. 20 September 1984); United States v. Garcia, 18 M.J. 716 (A.F. C.M.R.1984).
In the present case, the appellant fails on both parts of the test. The record and the defense counsels’ affidavits satisfy us that the errors and omissions complained of by the appellant either did not occur or were tactical decisions which were part of his professional defense. Such tactical decisions will ordinarily not be disturbed on appeal. United States v. Rivas, 3 M.J. 282 (C.M.A.1977) Even if these were poor tactics, or even errors, on the
part of the defense counsel, they clearly did not prejudice the defense so seriously as to deprive the appellant of a fair or reliable trial.
VI
Appellant next asserts that the Staff Judge Advocate’s Review was erroneous because part of the recommendation against sending him to the 3320th Corrections and Rehabilitation Squadron was based on his refusal to admit his guilt. The Review states, without citation, that “(u)ntil he admits his wrongs, there is no possibility of any successful rehabilitation taking pláce.” We cannot find authority for such a philosophy, and agree with the defense counsel that a servicemember’s refusal to admit guilt, before or after trial, should not exclude him from the opportunity for rehabilitation. Air Force Regulation 125-18, Operation of Air Force Correction and Detention Facilities, 1 February 1980, lists the selection factors for immediate entry into the Rehabilitation Branch of the 3320th Correction and Rehabilitation Squadron. Of these selection factors, the only mandatory condition is that the offender be a volunteer for Return to Duty Rehabilitation (RTDR).[5] One of the non-mandatory factors is that the servicemember must have a “tractable attitude,” but that is a far cry from requiring all candidates for RTDR to proclaim their guilt publically.
The American Bar Association has stated that “whether the defendant pleads guilty, pleads not guilty or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence”.[6] We believe these considerations are similarly irrelevant to the decision on selecting candidates for RTDR unless they are used to illustrate a general intractable attitude which makes *505 the person a poor candidate for such a program.
The reviewer also advised against selecting the appellant for RTDR because of the length of his sentence. The reviewer carefully did not tell the convening authority that the appellant was foreclosed from selection, only that he did not recommend it.
While we do not believe a candidate for rehabilitation must admit his guilt, we agree with the reviewer that the appellant does not appear to be a good candidate for RTDR. We find that the appellant was not prejudiced by the reviewer’s mention of his failure to admit his guilt.
V
Finally, the appellant asserts that the sentence is inappropriate. He relies on his past exemplary record, the many statements made in support of leniency or clemency, and a statement made by the judge just before sentencing, to establish that the sentence is inappropriate.
Just prior to announcing sentence, the military judge stated:
The court has got some brief remarks to address before pronouncing sentence. I’m going to confine my remarks only to those matters which I’d hope that reviewing authorities would consider in the months immediately ahead, and perhaps at some later dates.
Now the information that the court has before it does indicate that the accused in this case has been an industrious, talented, respected member of both the civilian and the military communities. It would be the court’s inclination to conclude, and I have no basis for doing otherwise, that the accused’s actions on the 8th of June of this year represented an aberration, an extreme and very shocking departure from his normal behavior patterns. Now based upon my own review of the accused’s performance and his reputation in his present military community, insofar as it has been made known to me in the course of the trial; and my own observation of the accused’s exemplary bearing and demeanor during the ordeal of the past few days, the court fully hopes and expects that the accused, Staff Sergeant Rogan, can and will return to society in time as a productive, respected and consistently law abiding member.
These words by the judge do not impeach his sentence. They are just some thoughts he wished to be considered at indefinite times in the future as the appellant’s case is considered. As such they are entirely proper. We have considered the entire record, including these words by the judge, and conclude that the sentence is appropriate.[7] See United States v. Riddick, 19 M.J. 517 (A.F.C.M.R.1984). Accordingly, the findings of guilty, as approved by the convening authority, and the sentence are
AFFIRMED.
HODGSON, Chief Judge, and FORAY, Senior Judge, concur.

. The appellant is black. These two officers were apparently the only black members of the court-martial. We do not know the race of the substituted members. When questioned by the *503 military judge, the defense counsel stated she was not contending that the substitution indicated a systematic attempt to exclude blacks from the court.

. Of course, defense counsel could always interview these officers outside of court if she desired.

. He listed three specific concerns: 1) racial comments made by the victim, 2) an alternate explanation for the redness on victim’s scalp, and 3) his lack of understanding of why defense counsel advised him to request trial by judge alone. In preparing the reply to this assertion, appellate government counsel requested affidavits from both trial defense counsel. Those affidavits demonstrate by reference to the record that items 1) and 2) were adequately discussed by the defense at trial. Of course, the record says nothing about how the defense counsel advised the appellant on his election for trial by judge alone or with members, but both counsel stated they thoroughly discussed this issue with him and that he was an active participant in the decision to be tried by judge alone. In addition, this letter and these three concerns were fully treated in the Staff Judge Advocate’s Review thereby insuring the convening authority was aware of this information before he took action.

. United States v. Reynolds, 19 C.M.R. 850 (A.F.B.R.1955); United States v. Franklin, 3 M.J. 785 (A.C.M.R.1977): United States v. Hathaway, 3 M.J. 1073 (A.C.M.R.1977).

. There are other conditions on entry listed elsewhere in the regulation. Of most importance to this case is the requirement that the approved sentence to confinement must not exceed one year. In exceptional cases this can be extended to 18 months when the convening authority certifies that the prisoner is exceptionally well qualified for rehabilitation and restoration.

. Standards Relating to Probation, Section 1.3(b) (Approved Draft, 1970).

. We have also considered those matters to which our attention was drawn pursuant to United States v. Grostefon, 12 MJ. 431 (C.M.A. 1982).