UNITED STATES

v.

**Technical Sergeant Bruce D. TURNER, FR 262–35–6215, United States Air Force.**

**ACM S28163.**

U.S. Air Force Court of Military Review

Sentence Adjudged 27 June 1989.

Decided 7 June 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain James C. Sinwell.

Before LEONARD, MURDOCK and RIVES, Appellate Military Judges.

## DECISION

LEONARD, Senior Judge:

Appellant was convicted of stealing an oscilloscope, military property of the United States, of a value of about $1,999.75. On appeal to us appellant asserts eleven errors. We find limited merit in one assertion and we set aside appellant's sentence because of an unasserted error.

### I

Appellant asserts he was prejudiced by the military judge allowing trial counsel, over defense objection, to elicit evidence that appellant refused to consent to a search of his home.

Trial counsel elicited the following evidence from Special Agent Gardner. When appellant was questioned about the missing oscilloscope, he denied stealing it, but admitted he had it at his house. Gardner and other agents requested consent to search his house. Appellant refused, but told them, if they came with him to his house and waited outside, he would turn the oscilloscope over to them. The agents agreed and accompanied appellant to his house where he brought the device out to them.

Appellant's trial defense counsel objected to Gardner's testimony on the ground that it was an improper comment upon the appellant's exercise of his Constitutional rights. Trial counsel stated the evidence was being offered to show that appellant had not "voluntarily" produced the oscilloscope as the trial defense counsel had stated in his opening argument.

The military judge overruled the objection. He held that a refusal to consent to a search was not subject to the same protection as the exercise of the rights to counsel or to remain silent. He also held that appellant's counsel's opening statement had raised the issue of the voluntariness of the return of the oscilloscope and Gardner's testimony was fair rebuttal to that statement.

We agree with the military judge's ruling. There is no precedent to indicate that allowing the government to present relevant evidence or comment on an accused's refusal to consent to a search is prejudicial error. Further, we find that trial defense counsel's opening statement made the circumstances of the turnover of the oscilloscope an issue. Once it was asserted that the turnover was "voluntary," the government was entitled to show the actual circumstances of the surrender of the item. *Cf. United States v. Jones*, 21 M.J. 819 (N.M.C.M.R.1985); *United States v. Fisher*, 17 M.J. 768 (A.F.C.M.R.1983).

### II

We find no prejudicial error in trial counsel's request, in her sentencing argument, for the members to consider that appellant's "testimony" (unsworn statement) was not given under oath. *United States v. Breese*, 11 M.J. 17 (C.M.A.1981); *United States v. Smith*, 23 M.J. 744 (A.C.M.R.1987).

### III

There is no merit in appellant's assertion that the military judge erroneously admitted a summary used by Special Agent Gardner as past recollection recorded. The

summary itself was never admitted as an exhibit. Special Agent Gardner only referred to it, while he was testifying, to refresh his memory. At one point, even after referring to the summary, he could not remember a statement attributed to the appellant. The military judge then allowed him, over defense objection, to testify as to this statement using the summary as past recollection recorded. The summary had been prepared from Gardner's notes and the written statement he had helped take from the appellant. Therefore, we are satisfied that the summary used by Gardner qualified as a recorded recollection under Mil.R.Evid. 803(5) and we find no error in the military judge's ruling.

## IV

■ The assertion that trial counsel's improper findings argument prejudiced appellant also has no merit. Trial counsel began her argument by giving a list of facts or circumstances that the court would have to find before they could find the appellant innocent. Such argument is improper because it gives the wrong impression that an accused has the burden of proving his innocence. R.C.M. 919(b) Discussion; R.C.M. 920(e). The defense did not object to this argument; but, after a request by the court president to repeat some of the list, the military judge interrupted and gave a curative instruction to the members.

The military judge instructed that the government had the burden of proving the accused's guilt, beyond a reasonable doubt, and the defense did not have to prove anything. Further, at the conclusion of arguments on findings, the military judge thoroughly instructed the members on reasonable doubt, the presumption of innocence, and the government's burden of proof. Additionally, he provided the members with a written copy of this instruction and the remainder of his findings instructions.* We find that the military judge's curative instruction and findings instruction avoided

any prejudice from trial counsel's improper argument.

We caution both trial counsel and military judges to be alert for such improper argument. Argument of this type seems logical and persuasive to inexperienced trial counsel. However, it is clearly improper and, if left uncorrected, could be grounds for reversal of findings.

## V

■ Appellant also asserts that the military judge abandoned his judicial role by *sua sponte* ordering the government to reopen its case after the members had begun deliberations. In the alternative, he asserts that the military judge abused his discretion by directing or permitting the government to reopen its case after the members had entered closed deliberations.

After the members had begun deliberations on findings, they asked that the court be reopened. After reopening, the president of the court asked for "technical help" in making a determination of whether the oscilloscope belonged to the U.S. Government and was military property. The president pointed out that the serial number on the documentation the court members had been provided did not exactly match the serial number on the oscilloscope. He speculated that the number on the document may have been a misprint.

At this point the military judge called an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session. After determining that the serial number on the document was close to, but did not match the serial number on the oscilloscope, he asked counsel "What else can we provide the court that will be of any assistance to them?" The trial counsel replied that they could recall one of the witnesses to provide additional documentation or explain the discrepancy. After some discussion about the witnesses' availability, the military judge told trial counsel "I think we better get him over here." Up to

---

\* We commend the military judge for providing the court members with written findings instructions. Many civilian jurisdictions require judges to provide written as well as oral instructions on findings in criminal cases. Providing written instructions significantly reduces the possibility of misunderstanding instructions and the need for returning to open sessions in the middle of deliberation to re-instruct or answer questions on instructions.

**1186**

this point there was no request by the government to reopen its case or any objection by the defense.

After a brief recess, the 39(a) session reconvened and trial counsel stated that he would recall two witnesses to address the members' question. The military judge then asked the defense if they had any objection to answering the members' question in this way. The defense counsel conceded that the military judge had the authority to allow a party to reopen its case, but he requested that the defense also be allowed to reopen its case. The military judge was unsure of whether he was allowing the government to reopen or merely addressing the members' question. However, he agreed that both sides would be allowed to present evidence on the issue raised by the members' question.

We do find that the government was permitted to reopen its case after the members had begun deliberations. However, we do not agree with appellant's contention that the military judge abandoned his judicial role by *sua sponte* ordering the government to reopen their case.

■ A military judge has the discretion to allow either party to reopen its case. *United States v. Smith,* 15 U.S.C.M.A. 416, 35 C.M.R. 388 (1965); *United States v. Mahone,* 14 J.J. 521 (A.F.C.M.R.1982); R.C.M. 913(c)(5). It is also within the discretion of the military judge to grant a request of the members that the court-martial be reopened and additional evidence introduced. R.C.M. 921(b). Further, the military judge has the responsibility to exercise reasonable control over the proceedings to promote the purposes of the Rules for Courts–Martial. R.C.M. 801(a)(3). We find that the military judge was not abandoning his judicial role by supervising the reopening of the government's case to respond to the members' question. Rather, he was correctly exercising his judicial responsibilities as provided under R.C.M. 801, 913 and 921. Under these rules, it would be appropriate for a military judge to either grant a government request to reopen or to ask the government to present additional evidence for the members.

## VI

■ Appellant also asserts that he was substantially prejudiced by the refusal of the military judge to allow the defense to recall a witness after the government case had been reopened. We agree with appellant that, once the court-martial had been reopened, the military judge erred in not allowing the defense to present additional evidence on the issue of identification of the oscilloscope.

After the government had recalled two witnesses to testify that the oscilloscope turned in by appellant was the one missing from his old unit, the defense requested recall of Special Agent Gardner. Trial defense counsel represented that Gardner's recall would be to present two matters. First, that he had placed an identification tag on the oscilloscope when he obtained it from appellant. Second, that when he received it, the oscilloscope was in a briefcase.

Trial defense counsel asserted that the testimony about the identification tag would rebut the recall testimony of Technical Sergeant Seese that he could identify the oscilloscope because of a sticky smudged area on the back that was the size of a unit identification tag he had placed on the item when it was received in his section. Trial defense counsel admitted the testimony about the briefcase would not rebut any evidence presented by the government after they reopened their case. Rather, he stated that it would rebut evidence earlier in the trial that the oscilloscope belonging to the unit was too big to fit into a briefcase. He stated he had intended to present this rebuttal evidence earlier, but had forgotten to do so.

The military judge ruled that the proffered evidence was not relevant to the question raised by the court members and refused to allow the defense to reopen its case to present either item of evidence. This was an abuse of discretion by the military judge. R.C.M. 913(c)(5); R.C.M. 921(b). Once he had allowed or asked the government to reopen its case to establish the ownership of the oscilloscope, he should

have allowed the defense to present any evidence that would be relevant to this issue. However, we do not find the error substantially prejudiced appellant under the circumstances of this case.

The defense theory of the case was not to dispute the ownership of the item, but to maintain that the appellant had not stolen it. In his closing argument on findings, the trial defense counsel stated that the defense was not disputing that the oscilloscope before the court was the one that was missing from appellant's old unit. Their position was that the oscilloscope had been mistakenly shipped with appellant's household goods to his new duty location and as soon as he discovered the mistake, he reported that he had it and turned it in upon request.

Both matters that the defense asked to reopen to present had already been presented to the court earlier. During Special Agent Gardner's original testimony, he identified the oscilloscope by the evidence label on it with his initials and the date that he had received it from Turner. The oscilloscope was also admitted into evidence as Prosecution Exhibit 1. The pictures of this exhibit in the record show that the evidence label prepared by Gardner was still on the oscilloscope when it was before the court. Therefore, although the military judge was incorrect in ruling that evidence of another possible source of the smudged sticky area was not relevant to the ownership of the oscilloscope, it does not appear that the evidence sought by the defense would have been helpful to them.

Gardner's original testimony had also informed the court that Turner had discovered the missing oscilloscope in one of his briefcases. From that testimony and the actual oscilloscope, the court members could determine whether the oscilloscope could fit into a briefcase. Further, with respect to this evidence, we agree with the military judge and the trial defense counsel that it would not have been in rebuttal of anything the government had presented during the reopening of their case.

## VII

■ Appellant also maintains that the evidence introduced at his trial was insufficient to prove beyond a reasonable doubt that he stole the oscilloscope. We disagree. Appellant certainly had the opportunity to steal the oscilloscope and it was finally found in his possession. It is obvious that the court members did not believe that the item came into his possession innocently. We also decline to believe that explanation.

After reviewing all the evidence, we are convinced of both the legal and factual sufficiency of appellant's guilt. The evidence presented was certainly sufficient to allow a reasonable factfinder to find all the essential elements of larceny beyond a reasonable doubt. We are further convinced, after weighing the evidence in the record and making allowances for not personally observing the witness, of appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

## VIII

The remaining errors asserted by appellant are of no merit. *United States v. Willis*, 22 U.S.C.M.A. 112, 46 C.M.R. 112 (1973); R.C.M. 905(e); R.C.M. 1106(f)(6).

## IX

■ The final error we address is an improper comment that trial counsel made in sentencing argument. Trial counsel argued that appellant should not be considered for rehabilitation because:

The defendant (sic) hasn't even taken the first step towards rehabilitation. He can't admit what he did.

Appellant had elected to plead not guilty and have his right to a full trial of the facts. In *United States v. Johnson*, 1 M.J. 213 (C.M.A.1975), Senior Judge Ferguson condemned such sentencing argument comment, when an accused pleads not guilty, with the following statement:

Such comments as those we now condemn convey the intolerable unspoken message that it is proper to punish an accused who has put the prosecution to

the test, not just for the crime itself, but also for so inconveniencing the Government.

*Johnson,* 1 M.J. at 215.

No relief was necessary for the error in *Johnson* because the military judge recognized the problem and gave a cautionary instruction that cured the prejudicial effects of the improper comments. 1 M.J. at 216. In appellant's case, there were no objections to the comment and the military judge did not recognize the problem and give a curative instruction.

 Failure to object to error in sentencing argument before the military judge begins to instruct the members on sentencing will waive the error unless it amounts to plain error. *United States v. McPhaul,* 22 M.J. 808 (A.C.M.R.1986), *pet. denied* 23 M.J. 266 (C.M.A.1986); R.C.M. 1001(g). In order to constitute plain error, the error must be obvious and substantial and it must have had an unfair prejudicial impact on the members' deliberations. *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986).

The error in sentencing argument in appellant's case was obvious and substantial. Senior Judge Ferguson pointed out in *Johnson* that an accused has a fundamental right to plead not guilty and a plea of not guilty is simply an exercise of an absolute Constitutional protection and improper comment on this right is "intolerable." 1 M.J. at 215; *Cf. United States v. Chaves,* 28 M.J. 691 (A.F.C.M.R.1988) (military judge's instruction including lack of remorse as aggravating factor); *United States v. Rogan,* 19 M.J. 646 (A.F.C.M.R. 1984) (post-trial review recommending against rehabilitation because of failure to admit guilt).

Appellant's case was intensely litigated and involved two days of trial. At the time of his trial, he was a technical sergeant with over 16 years of excellent service with no prior disciplinary problems. Despite this record, appellant was sentenced to a bad conduct discharge, forfeiture of $466.00 pay per month for six months, and reduction to airman basic. Further, this sentence was imposed by a court consisting entirely of members with no prior court-martial experience. Allowing the court members to deliberate on sentence with an impression that they could consider appellant's failure to admit guilt as evidence of lack of rehabilitation created a strong possibility of substantial prejudice on the consideration of an appropriate sentence. Since we cannot accurately determine what sentence may have been adjudged absent the prejudicial error, we set aside appellant's sentence. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990).

We have examined the record of trial, the assignments of error and the government's reply. The findings of guilty are correct in law and fact and are affirmed. Having found error which materially prejudiced the substantial rights of the appellant, the sentence is set aside. A rehearing may be held.

Senior Judge MURDOCK concurs.

Judge RIVES did not participate.