CRAWFORD, Chief Judge
(dissenting):
I interpret the sequence of events at trial differently than the majority. In my view, the testimony elicited through the Government’s direct and redireet-examination of Special Agent (SA) Maureen Lozanía was proper rebuttal of the defense’s allegation of a coerced confession, prominent in both the opening statement and the cross-examination of SA Lozanía. Additionally, the lead opinion stands in stark contrast to prevailing trial practice and the weight of legal authority. For these reasons, I respectfully dissent.

THE OPENING STATEMENT AND DIRECT-EXAMINATION OF SA LOZANIA

In its opening statement, trial counsel outlined the sequence of events that occurred during the interrogation, to establish that the interrogation resulted in a confession. Trial counsel noted:
They bring her in, talk to her for a few minutes to just sort of build rapport, and then when required to do so by the Uni *321 form Code of Military Justice, advise her of her Article 31 rights. She again, as with all suspects, is advised she has the right to remain silent, she has the right to request a lawyer, she is under investigation for a violation of the Uniform Code of Military Justice, and Airman Kasper tells the OSI agents [sic], “I understand my rights. I waive my rights. I’m willing to talk to you.” Agent Lozanía questions Airman Kasper. Airman Kasper initially denies the use of ecstasy. Agent [sic] Reese, after a point, takes over the questioning. He talks to her about various things, including trying to put it in to respect a typical case of OSI investigations/interrogations, the fact this could be a lot worse. People could accuse you of a bad crime here, or using every day. How much are you using it? And as the more experienced investigator, Agent [sic] Reese gets Airman Kasper to admit using drugs, specifically, as Agent [sic] Reese and Agent Lozanía will tell you, Airman Kasper said “I used it one time,” raises her finger, her index finger, and starts crying.
There was no suggestion of coercion in trial counsel’s opening statement. Trial counsel simply walked the members through the interrogation process, which successfully resulted in a confession.
Defense counsel responded by informing the members that they would see “[a]n alleged oral confession by Airman Kasper,” which counsel then highlighted was one of only two items on which the Government’s case rested. (Emphasis added.) Counsel then strikingly noted:
You will also hear that those OSI agents [sic] kept pushing and pushing and pushing, after Airman Kasper denied and denied and denied, and they believed that they heard her confess to a one-time use of ecstasy. When they started that interrogation of Airman Kasper, at that point, before they even asked question one, right out of the chute, they had in their minds already suspected her of having used ecstasy. They had already interviewed at least one other suspect in the case, Airman Wells. They’d already decided — they’d already had a preconceived notion of what they thought she had done.
(Emphasis added.) This vivid language epitomizes the tone of the defense counsel’s opening statement. In short, the opening statement suggested that the coercive nature of the interrogation invalidated, and in effect rendered nonexistent, Appellant’s confession.
By creating a theme of coercion in its opening statement, the defense opened the door for Government rebuttal on the issue. See United States v. Franklin, 35 M.J. 311, 317 (C.M.A.1992); United States v. Chavez, 229 F.3d 946, 952 (10th Cir.2000); United States v. Croft, 124 F.3d 1109, 1120 (9th Cir.1997); United States v. Moore, 98 F.3d 347, 350 (8th Cir.1996); United States v. Knowles, 66 F.3d 1146, 1161 (11th Cir.1995); United States v. Breitkreutz, 977 F.2d 214, 220 (6th Cir.1992); United States v. McAnderson, 914 F.2d 934, 949 (7th Cir.1990); see generally James W. McElhaney, Trial Notebook, “Opening the Door” 163 (3d ed.1994). Moreover, by raising the possibility of a coerced confession, the defense challenged the Government to “prove at least by a preponderance of the evidence that the confession was voluntary.” Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Indeed, this challenge reflected the “defendant’s constitutional right ... to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness[.]” Jackson v. Denno, 378 U.S. 368, 376-77, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). See also United States v. Ellis, 57 M.J. 375, 390-91 (C.A.A.F.2002)(Effron, J., dissenting). In so doing, the defense rendered the techniques used to elicit the confession fair game for Government inquiry, as such techniques would have a “tendency to make the existence of ... [coercion] more probable or less probable than it would be without the evidence.” See Military Rule of Evidence 401.
With the door opened to address coercion, and bearing the burden to prove that Appellant’s confession was voluntary, the Government properly probed the techniques used by SA Lozanía to elicit the confession. Specifically, trial counsel asked SA Lozanía about his conversation during a break with a co- *322 interviewer, Mr. Travis Reese. SA Lozanía replied that he and Mr. Reese “decided that [Appellant] wasn’t telling the truth. She wasn’t being honest with us and we decided that we needed to build some themes and help her talk about. what had happened.” Trial counsel then asked if building themes was a common Office of Special Investigations (OSI) interview technique, to which SA Lozanía responded affirmatively. Thus, the portion of the Government’s direct examination of SA Lozanía that Appellant alleges was improper “human lie detector” evidence was, by contrast, a proper effort by the Government to refute the defense’s allegation of coercion. Cf. United States v. Turner, 39 M.J. 259, 262 (C.M.A.1994)(noting that because there was “nothing more than a single passing comment during defense counsel’s opening statement,” the door was not opened for a government response to the comment).

CROSS-EXAMINATION AND REDIRECT-EXAMINATION OF SA LOZANIA

Reiterating the theme of coercion developed in its opening statement, the defense then cross-examined SA Lozanía regarding the validity of OSI interview techniques. Specifically, defense counsel inquired about the “Reed Technique” used by OSI agents, and rhetorically asked, “I mean, you’re thinking she’s guilty, right?” and “From interrogations, the goal is to get a confession, isn’t it, at the end of the day?” Counsel also challenged SA Lozania’s failure to terminate the interview despite Appellant’s repeated denial of guilt and contrasted SA Lozania’s disbelief of Appellant’s denial with her acceptance of Airman Wells’s statement. The cross-examination discrediting SA Lozania’s interview techniques comprised approximately 14 pages of the record of trial.
Having already rendered the issue of a coerced confession fair game for argument through its opening statement, the defense opened the door to rebuttal even more widely through its extensive cross-examination of SA Lozanía. See United States v. Vasquez, 267 F.3d 79, 85 (2d Cir.2001); United States v. Segall, 833 F.2d 144, 148 (9th Cir.1987); United States v. Goudy, 792 F.2d 664, 673 (7th Cir.1986); United States v. Barrentine, 591 F.2d 1069, 1081 (5th Cir.1979); United States v. Walker, 421 F.2d 1298, 1299 (3d Cir.1970). Accordingly, in its redirect-examination, the Government asked SA Lozanía whether he believed Airman Wells’s statement was truthful, and then asked — after a session under Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a) (2000)— if indicators of untruthfulness prompted the agents to continue the interview with Appellant despite Appellant’s denial of guilt, to which SA Lozanía responded affirmatively. This line of questioning was properly targeted to refute the implication of coercion behind the defense’s cross-examination into the agents’ failure to stop their interrogation. Furthermore, the questions properly served to meet the Government’s burden to “prove at least by a preponderance of the evidence that the confession was voluntary.” Twomey, 404 U.S. at 489, 92 S.Ct. 619.
Moreover, the lead opinion misses the main issue in the case when it speaks of cautionary instructions as to character for truthfulness. The question of truthfulness, or lack of truthfulness, was raised as a voluntariness issue rather than a credibility issue concerning impeachment. 58 M.J. at 315, 318.
Accordingly, I would hold that the military judge did not err in allowing SA Lozania’s testimony and declining sua sponte to provide curative instructions.