UNITED STATES, Appellee,

v.

Bertram A. GANS, Private First Class,
U.S. Army, Appellant.

No. 64,266.
CM 8900886.

U.S. Court of Military Appeals.

Argued Feb. 13, 1991.

Decided June 25, 1991.

For Appellant: *Captain Mark L. Toole* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey* (on brief); *Captain Paula C. Juba.*

For Appellee: *Captain Timothy W. Lucas* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Randy V. Cargill* (on brief); *Captain Martin D. Carpenter.*

*Opinion of the Court*

COX, Judge:

The sole issue raised by this appeal is whether a child-sex-abuse victim's statement was properly admitted as past recorded recollection, in light of questions concerning the witness' present knowledge. 32 MJ 23 (1990). We hold the military judge did not err in admitting the victim's statement as "recorded recollection" under Mil.R.Evid. 803(5), Manual for Courts-Martial, United States, 1984, and we affirm the decision of the Court of Military Review.[1]

I

Military Rule of Evidence 803(5):

Recorded Recollection Exception to the Hearsay Rule

There are levels of preference for witness testimony. The first would have the witness testify from unaided memory. At the second, the witness would testify from memory that has been refreshed. Mil.R. Evid. 612. Finally, the third is where the witness' memory fails and is not refreshed. It is under these circumstances that an exception to the hearsay rule allows a record or memorandum to be read to the jury displaying the witness' past knowledge. Mil.R.Evid. 803(5).

A recorded-recollection exception to the hearsay rule has been generally recognized and has been described as having "long been favored by the federal and practically all the state courts that have had occasion to decide the question." *United States v. Kelly*, 349 F.2d 720, 770 (2d Cir.1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

"Rule 803(5) is taken from the Federal Rule without change...." Drafters' Analysis, Manual, *supra* at A22–49 (Change 2). To introduce a statement as past recorded recollection, one must show that the statement is

[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly.

Mil.R.Evid. 803(5); *United States v. Waggoner*, 22 MJ 692, 696 (AFCMR 1986), *pet. denied*, 24 MJ 204 (CMA 1987). A "memorandum or record" fulfilling these elements may then "be read into evidence, but" it cannot be presented to the factfinder "unless offered by an adverse party." Mil.R. Evid. 803(5).

Appellant now attacks the military judge's decision allowing his daughter's out-of-court sworn statement to be read to the members under Mil.R.Evid. 803(5) as

1. Appellant was tried at Fort Belvoir, Virginia, by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of desertion (two specifications), escape from confinement, rape (three specifications), forcible sodomy with a child, and committing indecent acts upon a child, in violation of Articles 85, 95, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 885, 895, 920, 925, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 30 years, total forfeitures, and reduction to E-1. The convening authority approved the sentence. The Court of Military Review affirmed in an unpublished opinion dated December 29, 1989.

past recorded recollection. He argues that the Government failed to prove that the statement was an accurate reflection of his daughter's knowledge at the time it was made and, therefore, the statement fails to satisfy Mil.R.Evid. 803(5).

## II

In early 1986, appellant was assigned to Fort Belvoir, Virginia. His 15–year–old daughter, V, lived with her mother (appellant's wife) several hours away in Hopewell, Virginia. About March 1986, V left her mother and came to live with appellant.

During the late summer of 1986, Mrs. Gans came to Fort Belvoir for a visit. When V got a chance to talk to her mother in private, she told her that she wanted to return to Hopewell. She also confided to her mother that appellant was sexually abusing her. Mrs. Gans promptly sought to remove V to Hopewell; appellant refused to permit it. Mrs. Gans thereupon contacted the military police, and V was removed from her father's control.

On September 2, 1986, the date the police were notified, V gave an out-of-court sworn statement (hereinafter-the statement) to military police investigators. In the statement, she alleged that appellant had sexually abused her regularly at least from the time she was 10 years old. She described numerous instances of sexual abuse that occurred during the spring and summer of 1986, which specifically included multiple rapes.

After V's statement was secured, appellant was taken into custody. On September 10, 1986, he was transported to Walter Reed Army Medical Center for forensic testing. While there, he disappeared. He was declared an unauthorized absentee and ultimately dropped from the unit rolls. Apparently, he settled in New York City, where he was apprehended a year and a half later. He was returned to Fort Belvoir on March 7, 1988.

With appellant back in custody, charges were preferred on March 10, 1988. An investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832, was conducted on April 7. On May 2, however, while appellant was awaiting out-patient medical care at Fort Belvoir, he escaped the custody of his escort and again disappeared. Once more he was declared AWOL and dropped from the rolls. He was re-apprehended in January 1989.

On March 1, 1989, V was deposed (hereinafter-the deposition). At this time, she professed great difficulty in remembering the events of the spring and summer of 1986. Indeed, her deposition testimony was significantly at odds with her prior sworn statement of September 1986. At the deposition, she remembered only that appellant touched her "private parts," i.e., her "breasts and vagina," with "[h]is fingers." She specifically denied his having touched her with any other part of his body, particularly his penis. The deposition broke down when trial counsel attempted to get an explanation for the variance in her statements; he then abandoned further efforts to extract information from her prior to the court-martial. Trial defense counsel asked no questions of the deponent.

On March 14, 1989 (2 weeks later), V was called as a prosecution witness in appellant's court-martial. Before the court members, trial counsel again asked her about the incidents that occurred during the spring/summer of 1986. This time, V professed to recall next to nothing.[2]

2. The flavor of V's testimony may be gleaned from the following excerpt taken from the direct examination by trial counsel on the merits and before the court members:

Q. Okay. Do you recall any incidences occurring between you and your father on Kimbro Loop?
A. Uh—no, not for awhile.
Q. Okay. When you say "not for awhile," how long were you living there before anything occurred?

A. I really can't remember how long it was.
Q. Do you think that you can remember what month that anything occurred?
A. Uh—no, I don't remember what month.
Q. What did happen when you say that something happened?

Thereupon, a session under Article 39(a), UCMJ, 10 USC § 839(a), was conducted, and trial counsel attempted to lay a foundation for admission of V's 1986 statement under the recorded-recollection exception to the hearsay rule. Mil.R.Evid. 803(5).

At this session, upon examination by trial counsel, V testified that she remembered making the statement and that she was "being truthful" when she made it. She also testified that, at the time of the statement, she could remember the "details, times, and places better than" she could at trial. Further, she agreed that the words on the document were her own and that the agent did not "lead" her or "put words in" her mouth. She explained that she had "tried to forget about what happened" in the 2½ years that had elapsed since the statement. Indeed, she asserted that she could not, at trial, remember the events. According to V, rereading her previous statement did not refresh her recollection. *See* Mil.R.Evid. 612. Furthermore, the inconsistencies she expressed at the deposition 2 weeks earlier were a result of her being "scared" and under stress. Her final comment on direct examination about the statement was that "all of it is true."

On cross-examination by trial defense counsel, however, the witness maintained that she told the truth at the deposition when she said appellant had not touched her "with anything other than his hands." She agreed that "the deposition is true."

Again on redirect, the witness acknowledged that, in the statement to the agent, she had asserted that appellant had in fact "touch[ed] ... [her] with his penis," and she once again affirmed the truth of that assertion. Moments later, however, when asked to explain why she had just testified "that he didn't touch you with his penis," she responded: "Uh—uh—I guess because he didn't." Then she allowed that "[m]ost of ... [what she had told the agent] was true," but she was simply unable "to talk about" even those parts of the events she could remember.

Upon examination by the court, she reversed herself again, admitting that when she gave the deposition she could not remember the events of 1986. In fact, when she said appellant "did not touch [her] with his penis," she did "[n]ot really" remember whether he did. Then she flip-flopped again, claiming that, when she made the deposition 2 weeks earlier, she *"could* remember" whether appellant had "touch[ed][her] with his penis"—*"and he did not."* (Emphasis added). Moments later, she reversed herself again and stated that she had no memory whatever of those events and likewise had no such memory when she gave the deposition.

And so it continued for a time, to no evident purpose. Eventually, the witness was excused.

Still in an Article 39(a) session, the Government next called an expert in the area of the sexual abuse of children who testified that it was common for child-sexual-abuse victims to "repress[ ] things that had happened to them when they were children." The witness (who had not examined V but observed her testimony) considered it possible that she was "trying to deal with it by pretending that it didn't happen."

A. Uh—[pause] I can't remember exactly when or what exactly happened.
Q. Can you just describe as best as you can recall what you remember happening on Kimbro Loop?
A. Uh—[pause] Uh—I can't remember.
Q. Did your father ever touch you in a manner that you thought was inappropriate?
A. Uh—yeah.
Q. How did he touch you?
A. Uh—[pause] uh—I—I don't know. I can't remember how or in which way.
Q. Well, do you remember what parts of your body that he *touched?*

A. Uh—uh—uh—uh—no, not really.
Q. [D]o you remember anything at all specific about what happened at all while you were living on Kimbro Loop?
A. Not specific, no.
Q. Okay. What about generally?
A. Excuse me.
Q. Just *in general, what happened that summer?*
A. Uh—[pause] Uh—I don't remember. I don't.

To corroborate the accuracy of V's initial statement, the Government called a former Fort Belvoir neighbor as a witness. She testified that she "would hear his [appellant's] daughter scream sometimes in the evening." According to the witness, V "would be screaming, 'Stop Daddy, you are hurting me,' and then she would just cry or something like that." Asked how often this would occur, the witness replied: "I wouldn't say every night but I couldn't limit it to three or four times a week either."

As additional corroboration, the Government previously had called appellant's son, D, who was several years younger than V. On the merits, he recalled seeing, during a visit to Fort Belvoir in 1986, appellant with his hand under V's shirt in the vicinity of her chest area. Appellant kept his hand there, according to D, "[a]bout fifteen minutes."

Initially, the judge ruled the 1986 statement inadmissible. His rationale was that the prosecution had failed in its burden to show "that the events when recorded were fresh in the witness's mind." Specifically, the judge noted that many of the events allegedly occurred years earlier. In addition, the judge was concerned about the lack of "evidence as to the circumstances of the taking of this statement."

At the next session of the court-martial, the Government moved for reconsideration of the ruling. In doing so, the Government offered to redact all matters from the statement relating to conduct allegedly occurring prior to March 1986. The Government argued that the events from March–September 1986 were fresh enough in V's memory. Indeed, the Government noted that one of the accusations of rape allegedly occurred just 5 days before the statement.

In addition, the Government recalled Mrs. Gans and V as witnesses. Both testified about V's seeking to return to Hopewell and appellant's actions in refusing to permit it. Mrs. Gans acknowledged specifically that V complained that appellant was having sex with her. Both witnesses described the nonintimidating, non-leading nature of the interview conducted by the agent resulting in the 1986 statement.

Finally, the judge recessed the court to permit V to reread carefully the 1986 statement. When he reconvened the session, the judge asked her which parts of the statement were "not correct." V replied that the only part she did not remember was "the movies." [3] None of the other parts of the statement were "made up."

But again on cross-examination, she agreed that she just did not remember if there were "other things that ... may have [been] made up." After argument by both sides, the judge admitted the 1986 statement "as past recollection recorded" under Mil.R.Evid. 803(5). He limited the statement to that portion dealing with events during and after March 1986.

## III

We find that such contradictory testimony served not to disqualify the statement for admission but, rather, was evidence that the members could weigh in assessing it. Their resolution of the facts asserted therein is conclusive on us.

Under Mil.R.Evid. 803(5), counsel must show that the "memorandum or record concern[s] a matter about which [the] witness once had knowledge but now has insufficient recollection to enable" full and accurate testimony. Both of these prongs are supported by the testimony. The military judge believed and plainly stated:

> I find that the witness' memory is in fact exhausted and she cannot testify from her current memory as to the matters contained in the document.

A showing that the witness lacks all recollection of the event or condition described is not necessary; it is enough that the witness lacks sufficient recollection to testify fully and completely. Additionally, Mil.R.Evid. 803(5) does not require a specific finding that the memorandum or record is

---

3. According to the statement, appellant had shown V pornographic movies.

true and accurate. Once an adequate foundation is laid, recorded recollection "is admissible without independent judicial certification of reliability," *United States v. Yeauger,* 27 MJ 199, 202 (CMA 1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989), and despite testimony contradicting the accuracy of the record. *United States v. Williams,* 571 F.2d 344, 349–50 (6th Cir.), *cert. denied,* 439 U.S. 841, 99 S.Ct.131, 58 L.Ed.2d 139 (1978); *Asaro v. Parisi,* 297 F.2d 859, 862–64 (1st Cir.1962), *cert. denied,* 370 U.S. 904, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962).

The third requirement is that the memorandum or record be "made or adopted by the witness when the matter was fresh in" his or her memory. During the Article 39(a) session, the military judge had problems with this aspect of the test and made a preliminary ruling that the statement was not admissable because he felt "the prosecution ha[d] failed to carry its burden" to establish the events as being fresh in V's mind when recorded. However, after hearing further testimony from Mrs. Gans (who accompanied her daughter while she was giving the statement), the military judge decided that the events of that spring and summer as related by V were in fact fresh in her mind at the time she gave the statement.

■ Finally, the fourth prong of the test demands that the "memorandum or record ... reflect that knowledge correctly." V's testimony reflects that she intended the words on the statement as hers and that she signed the statement as a true account of the events. The evidence supports the findings that all of the elements of Mil.R. Evid. 803(5) were met.

### Confrontation Clause

■ Aside from determining admissibility of a statement under an exception to the hearsay rule, a court must determine whether its introduction would violate the Confrontation Clause. *United States v. Oates,* 560 F.2d 45, 81 (2d Cir.1977). Accordingly,

> otherwise admissible hearsay is subjected to still further constitutional scrutiny

to determine if the proffered hearsay has sufficient "indicia of reliability" to avoid offending the Confrontation Clause of the Sixth Amendment.

*United States v. Thevis,* 84 F.R.D. 57, 69 (N.D.Ga.1979). *See Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970) (plurality).

■ Appellant argues that, because V lacked recollection, his opportunity to cross-examine her was limited. We acknowledge such a limitation; however, the record shows that defense counsel had much success on cross-examination. In response to defense questioning, V admitted that some portions of her statements were not true and that others were made-up. *Cf. United States v. Haston,* 24 MJ 313, 315 (CMA) (witness' memory refreshed by interpreter translating transcript of her Article 32 testimony from English to German—no Confrontation Clause violation found), *cert. denied,* 484 U.S. 955, 108 S.Ct. 348, 98 L.Ed.2d 374 (1987). Surely, such damaging admissions are not indicative of an impotent cross-examination. The Sixth Amendment guarantees the opportunity for effective cross-examination; however, it does not guarantee that cross-examination will be effective. *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

■ It is further noted that Mil.R.Evid. 803(5) requires a declarant to testify as a witness, thereby assuring the defendant the opportunity to cross-examine. In this case, V testified and could be viewed by the triers of fact. *See United States v. Deland,* 22 MJ 70, 72 (CMA), *cert. denied,* 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986), *citing United States v. LeMere,* 22 MJ 61 (CMA 1986); *see also California v. Green,* 399 U.S. 149, 90 S.Ct.1930, 26 L.Ed.2d 489 (1970). For these reasons, we

find no Confrontation Clause violation. Much like the logic behind dying declarations, prior testimony of deceased witnesses, and other exceptions to the hearsay rule, Mil.R.Evid. 803(5) does not deprive a defendant of the right of confrontation as the Sixth Amendment has been interpreted. *United States v. Kelly*, 349 F.2d at 770. *See also United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir.1981); *United States v. Smalls*, 438 F.2d 711, 714 (2d Cir.), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1971).

## Conclusion

We hold that the military judge did not err by allowing V's out-of-court sworn statement to be read to the members. This is rightfully so, all matters having been presented to the members according to the Military Rules of Evidence, specifically Mil. R.Evid. 803(5).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.