# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and LEVIN[1]

**UNITED STATES, Appellee**
**v.**
**Specialist LUKE D. ENGLISH**
**United States Army, Appellant**

ARMY 20160510

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge (arraignment)
Kurt J. Bohn, Military Judge (trial)
Colonel Charles C. Poché, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Captain Bryan T. Osterhage, JA; Captain Heather M. Martin, JA (on brief); Lieutenant Colonel Tiffany M. Chapman, JA; Major Todd W. Simpson, JA; Captain Heather M. Martin, JA (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Captain Austin Fenwick, JA; Captain KJ Harris, JA (on brief).

6 September 2018

---------------------------------------
OPINION OF THE COURT
---------------------------------------

LEVIN, Judge:

Appellant's case is before this court for review under Article 66, UCMJ. Appellant raises three assignments of error.[2] The first, and most substantial, error concerns an evidentiary ruling made by the military judge. Second, appellant alleges the evidence is factually insufficient to support convictions for two specifications of rape and one specification of sexual assault. Finally, appellant asserts several charges and specifications amount to an unreasonable multiplication of charges. For reasons that follow, we find appellant is entitled to relief for the erroneous evidentiary ruling, which we provide in our decretal paragraph.

---

[1] Judge Levin decided this case while on active duty.

[2] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982)*,* appellant personally asserts a number of issues. They merit neither discussion nor relief.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted rape, four specifications of rape, one specification of sexual assault, six specifications of assault consummated by a battery, one specification of kidnapping, one specification of communicating a threat, and two specifications of obstructing justice, in violation of Articles 80, 120(a), 120(b), 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920(a), 920(b), 928, 934 (2012) [UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for twenty-three years, and reduction to E-1. The convening authority approved the findings and sentence as adjudged, and credited appellant with 152 days against the sentence to confinement.

## FACTUAL BACKGROUND

In 2015, appellant was stationed at Fort Bliss where he lived with his second wife, DE. In early August 2015, appellant and DE separated. They had no more sexual contact but continued living in the same home until DE found other housing. Appellant's girlfriend, JM, was also living in the house along with two children.[3]

DE separated her bank accounts from appellant before making arrangements to move out. This action angered appellant, and he began threatening her with violence. Later in August, appellant raped DE in the shower of their home. He told her that she was "raping" him financially and he wanted her to feel the same. She did not initially report the rape.

On 18 September, appellant asked DE for permission for JM to style his daughter's hair. DE said no, but appellant told JM to style his daughter's hair anyway, leading JM to believe DE had authorized it. Upon learning of this, DE became upset, and she texted JM, advising her that appellant was untrustworthy. JM ended her relationship with appellant.

When DE returned to the house from dinner that night appellant was in the yard burning their computer dressed in his complete Class A uniform. Appellant, who was noticeably intoxicated, threatened to commit suicide and then threatened to kill DE because of her involvement in the end of his relationship with JM. In the presence of their three year old daughter, appellant dragged and beat DE before restraining her with duct tape. After this, appellant sent a photograph of DE, bound in the duct tape, to JM. Among other physical and sexual offenses, appellant then choked, raped, and anally sodomized DE with vibrators. He also took DE to the bathroom and orally sodomized her while she remained restrained with duct tape.

---

[3] One of the children was appellant's and DE's biological daughter, and another was appellant's biological daughter (DE's step daughter).

Later that night, appellant ultimately cut DE free from the duct tape and threatened her not to call the police. Nevertheless, DE fled the house with her daughter, hid in a neighbor's yard, and called 911 to report the kidnapping, assaults, and rape. The police responded and found appellant in the house. The police informed the Army Criminal Investigative Division (CID), which immediately began investigating the incident. Several days later, appellant urged DE to recant her testimony about the abuse that had occurred on 18 September.

Appellant later began dating VL. On 2 February 2016, VL told appellant that she wanted to end their relationship. Several hours later, appellant choked VL while she was sleeping before dragging her upstairs to her bathroom. Appellant beat and choked VL unconscious in the bathroom and later choked her on the balcony. VL's ex-husband broke up the altercation later that night and called the El Paso Police Department.

## LAW AND DISCUSSION

### A. Evidentiary Ruling

Appellant claims the military judge abused his discretion by admitting into evidence a report by Officer Jacob Kiesel, a police officer with the El Paso Police Department.[4] On 3 February 2016, Officer Kiesel interviewed VL in her home. The police officer testified that when he arrived, VL was crying and had red marks on her neck. As he explained in court, commensurate with their department practice in family violence cases, Officer Kiesel retrieved his high definition camera, asked VL formulated questions, walked through the scene to film evidence such as injuries, and took a verbal statement. Afterwards, he uploaded the footage from the camera and included it in the case file. He also prepared a report based on the recording, his observations, and VL's verbal statements.

The report stated, in relevant part:

> [VL] stated that she had arrived at the residence at approximately 2100 hours on 2 February 2016 and engaged in a verbal altercation with [the accused] . . . . [VL] stated that both parties had been drinking and she informed the accused that things were not working out between them and the two wanted to separate asking [the accused] to have his items out of the house by the

---

[4] Pursuant to Military Rule of Evidence 803(5), the memorandum or record, if properly admitted, may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party. In this case, the report was read into evidence.

morning. [VL] stated that she decided to sleep on the couch for the night to avoid any further argument or altercation. [VL] stated that she was asleep on the couch when she suddenly awoken [sic] at approximately 0200 hours when she felt something wet on her. [VL] stated that [the accused] was standing over her and quickly grasped her with his right hand around her throat pinning her to the couch. [VL] stated that [the accused] was telling her that she was the love of his life and he could not live without her. [VL] stated that [the accused] then begin [sic] pulling her up the stairs of the apartment and toward the bathroom. [VL] stated that she was attempting to fight [the accused] off of her, but [he] was pulling her by the neck, hair, and arms into the bathroom and showed her the bathtub, in which he claimed to have attempted suicide.

. . .

[VL] stated that the two then exited the restroom and became engaged in a struggle in the hallway. [VL] stated that [the accused] grabbed her around the neck from the rear in a 'choke' hold, and squeezed until she was completely unconscious. [VL] stated that she regained consciousness a short while later and attempted to run away from [the accused], who was standing over her.

. . .

[VL] stated that she attempted to calm down [the accused,] asking him to step onto the balcony with her and smoke a cigarette to calm down. [VL] stated that the two were on the balcony for a short while and that the argument again escalated. [VL] stated that [the accused] then used his hands to cover her nose and mouth, again preventing normal breathing. [VL] stated that she began attempting to yell . . . [and] stated that [her ex-husband] then burst into the apartment and rushed upstairs confronting [the accused].

The government called VL as a witness at trial. It is clear from the testimony that VL did not want to testify and was only present because of a government

subpoena.[5]  When asked about the events of 2-3 February 2016, VL testified that she could not remember anything that happened that night.  She testified she did not even remember speaking with the Officer Kiesel, making any statement, and denied appellant assaulted her.  When shown the report, VL said it did not refresh her recollection of either the alleged series of attacks or the interview itself.

Faced with a witness who claimed to lack any recollection whatsoever of the events of that night, the government sought to introduce Officer Kiesel's report pursuant to Military Rule of Evidence [Mil. R. Evid.] 803(5), the recorded recollection exception to the hearsay rule.

Military Rule of Evidence 803(5) was taken without change from its federal counterpart.  *United States v. Gans*,[6] 32 M.J. 412, 416 (C.M.A. 1991) (citing *Manual for Courts-Martial, United States* (1984 ed.), analysis at A22-49 (Change 2)).[7]  Under Mil. R. Evid. 803(5), a recorded statement of a witness may be read into the record when it is shown that: (1) the recorded statement contains matters of which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately; (2) the recorded statement was made or adopted by the witness when the matter was fresh in the witness's memory; and, (3) the recorded statement correctly reflects that knowledge.  Mil. R. Evid. 803(5); *United States v. Waggoner,* 22 M.J. 692, 696 (A.F.C.M.R. 1986), *pet. denied,* 24 M.J. 204 (C.M.A. 1987).  A "memorandum or record" fulfilling these elements may then "be read into evidence but" it cannot be presented to the factfinder unless "offered by an adverse party."  Mil. R. Evid. 803(5).

"The burden of proving that notes reflect a witness's own words rather than the note taker's characterization falls on the party seeking to introduce the notes." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (per curiam).  "[A] 'third

---

[5]  By the time of trial, VL had reconciled with appellant, they still had an ongoing relationship, and she provided him a letter of support during sentencing.

[6]  *Gans* recognized that, "A recorded-recollection exception to the hearsay rule has been generally recognized and has been described as having 'long been favored by the federal and practically all the state courts that have had occasion to decide the question.'"  32 M.J. at 413 (citing *United States v. Kelly,* 349 F.2d 720, 770 (2d Cir. 1965), *cert. denied,* 384 U.S. 947 (1966)).

[7]  For the current version of the rule, the Notes of Committee on the Judiciary state, "[w]hen the verifying witness has not prepared the report, but merely examined it and found it accurate, he has adopted the report, and it is therefore admissible."  S. Rep. No. 93-1277, Notes of the Committee on the Judiciary.  The drafters envisioned the rule covering situations involving "information being passed along a chain of persons."  *Id.*  However, this "chain" still requires a proper foundation be laid.

party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization." *Id.* (citing *United States v. Leonardi,* 623 F.2d 746, 757 (2d Cir. 1980), *cert. denied,* 447 U.S. 928 (1980)). When a witness's statement is recorded by another, both the witness and the one transcribing the statement must testify as to the accuracy of the report "to establish that the statement is the witness's past recollection recorded under Rule 803(5)." *United States v. Schoenborn,* 4 F.3d 1424, 1427-28 (7th Cir. 1993) (citing *United States v. Williams*, 951 F.2d 853, 858 (7th Cir. 1992)). "Once an adequate foundation is laid, recorded recollection 'is admissible without independent judicial certification of reliability.'" *Gans*, 32 M.J. at 417 (quoting *United States v. Yeauger*, 27 M.J. 199, 202 (C.M.A. 1988)).

Officer Kiesel took the stand and testified that he interviewed VL, recorded the interview, and accurately transcribed VL's statement in a report. According to Officer Kiesel, he did not review his report with VL. Officer Kiesel did not have her sign the statement[8] and did not testify that VL informed him that the statements she made that evening were accurate. Trial defense counsel objected to the admission of the report on the grounds that the report did not contain matters about which VL once knew and that the recorded statement did not correctly reflect personal knowledge.

With respect to the latter point, the government argued that "the record being made in such a close temporal proximity with a victim witness who was at the time coherent, such a record would have accurately reflected her knowledge at the time to a law enforcement officer."[9] After hearing argument from both sides, the military judge allowed Officer Kiesel to read the portions of his report set out above.

On appeal, appellant argues that this decision was error on the grounds that the report was not made or adopted by VL and that the recorded statement does not correctly reflect VL's knowledge.[10] By objecting to the evidence at trial, defense

---

[8] The foundation may be laid if the witness at least recognizes his or her handwriting on the document. *See* DAVID A. SCHLUETER ET AL., Military Evidentiary Foundations 454-55 n.17 (Matthew Bender & Co. 5th Ed. 2013) (In this situation, "in reality, the witness is vouching for his or her own honesty. The witness is really testifying that he or she is an honest person and would not knowingly record false data.").

[9] As discussed in greater detail below, the government conflated the requirement that a witness have knowledge of the matter with the requirement that the witness correctly related that knowledge.

[10] Appellant has properly abandoned his claim that VL did not once have knowledge of the matters at issue.

counsel preserved the issue on appeal.  Hearsay is not admissible except as provided by the Military Rules of Evidence or by any Act of Congress applicable in trials by court-martial.  Mil. R. Evid. 802.  Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Mil. R. Evid. 801(c).

Our superior court has held "[a] military judge's ruling admitting or excluding evidence is reviewed for abuse of discretion." *United States v. Moolick*, 53 M.J. 174, 176 (C.A.A.F. 2000) (citation omitted); *see United States v. Dewrell*, 55 M.J. 131, 137 (C.A.A.F. 2001).  Federal courts give special deference to these evidentiary rulings "because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of the judge's familiarity with the case and ability to gauge the impact of the evidence in the context of the entire proceeding." *United States v. Suggs*, 374 F.3d 508, 516 (7th Cir. 2004) (citation omitted) (reviewing an evidentiary ruling under Fed. R. Evid. 803(5)).  As such, this court "will reverse for an abuse of discretion [only] if the military judge's findings of fact are clearly erroneous or if [the] decision is influenced by an erroneous view of the law." *United States v. Vassar*, 52 M.J. 9, 12 (C.A.A.F. 1999) (citing *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996) (internal quotations omitted)).  "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion.  The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citations and internal quotations omitted).  To establish an abuse of discretion, the appellant must come forward with a conclusive argument. *See United States v. Houser,* 36 M.J. 392, 397 (C.M.A.1993) (citing *United States v. Mukes,* 18 M.J. 358, 359 (C.M.A.1984)).  Even if this court finds that a military judge abused his discretion, relief is only granted upon a showing of prejudice. *See United States v. Garcia,* 44 M.J. 27, 30 (C.A.A.F. 1996).

In this case, we agree with appellant that the evidence should not have been admitted and that the error constituted an abuse of discretion.[11]

We can quickly dispatch appellant's complaint on appeal that VL did not make or adopt the statement.  While she did not adopt it, there is no question that VL made the statement.  It is not essential, to benefit from past recollection

---

[11]  On appeal, among other cases, government counsel cite to our sister court's opinion in *United States v. Turner*, 30 M.J. 1183 (A.F.C.M.R. 1990), in support of their argument that the military judge properly allowed the police officer to testify from a summary of VL's statement.  However, the facts of that case are completely different from appellant's case.  In *Turner*, the Special Agent properly read a summary of the accused's own admissions to the Special Agent. *Id.* at 1184-85.  Reading a summary of an admission by a party opponent is readily distinguishable from law enforcement reading a summary of a witness statement against an accused.

recorded, that the witness shall have made the memorandum or record itself. The memorandum or record may have been made by another person if the witness saw it when the event was fairly fresh in the witness's memory. *See, e.g.*, *United States v. Barrow*, 363 F.2d 62, 67 (3d Cir.1966) ("In the few instances in which the grand jury testimony failed to refresh the memory of the witnesses, portions of it were received as evidence of past recollection recorded. This was not an improper use of such testimony."); *United States v. Patterson*, 678 F.2d 774, 779 (9th Cir. 1982) (holding that the admission of portions of grand jury testimony as past recorded recollection is proper use of such testimony); *United States v. Shorter*, 1999 U.S. App. LEXIS 19670, at *4 (4th Cir. Aug. 19, 1999) ("Admission of portions of grand jury testimony is a proper use of the recorded recollection exception.").[12]

In this case, there was overwhelming evidence that those portions of Officer Kiesel's report read into the record reflected VL's words. However, VL stated she could not remember making the statement. Accordingly, the government satisfied the first two prongs of Mil. R. Evid. 803(5).

The third prong of the test demands the memorandum or record correctly reflect the witness's knowledge. While there is no requirement the record itself be true and correct, there must be evidence that a witness intended to provide a true account of the events. *See, e.g.*, *Williams*, 951 F.2d at 858 ("The person who witnessed the event must testify to the accuracy of his oral report to the person who recorded the statement.") Here, there is no evidence VL affirmed that she had provided a true account. VL did not sign a statement indicating the statement was accurate, nor did she testify that it was so.[13]

For example, the government did not attempt to introduce the video tape of VL's interview as a past recollection recorded. Instead, counsel read into the record portions of the police officer's report summarizing VL's verbal statements on the video. There is some authority in federal case law for introduction of the video tape as a past recollection recorded, based on trustworthiness of the statement. *See United States v. Jones*, 601 F.3d 1247, 1262-63 (11th Cir. 2010) (the witness acknowledged, at a minimum, that it was actually the witness speaking in the video). If the government had attempted to introduce the video, VL may have been able to at least lay the foundation that it was her speaking in the video and whether she would routinely tell the truth if questioned by law enforcement or at least not purposefully lie.

---

[12] These cases are silent as to whether the witness adopted the grand jury transcript, focusing instead on the fact that the witness later confirmed that at the time of the testimony, the events were fresh in his mind.

[13] To the contrary, at trial VL stated appellant had "never laid a hand on me from my memory."

Where the statement was recorded by someone other than the declarant, "accuracy may be established through the testimony of the person who recorded the statement." *United States v. Mornan*, 413 F.3d 372, 377-78 (3d Cir. 2005). While the military judge questioned whether a witness who had no recollection of an event could testify she intended to tell the truth when she initially provided the statement, the answer is fairly straightforward. Often times, when a law enforcement official takes a witness statement, the witness is asked if the information provided is true to the best of his or her knowledge. This may have occurred in this case. However, there is no evidence in the record that Officer Kiesel asked VL if the information was true, and we cannot read into the record facts that may or may not exist.

Furthermore, the facts of this case are distinguishable from *Gans* and other federal cases allowing admissibility when the person giving the statement cannot remember what was said at the time. In *Gans*, a complaining witness testified she had no memory of the events that led to the charges. This failure of memory is similar with appellant's facts. However, in *Gans,* the child witness also stated her statement to MP investigators as "being truthful" when made, at the time of the statement she could remember details better, that the words on the document were her own, and the agent did not lead her or put words in her mouth. She explained she had tried to forget what happened and as such she could not remember what happened at trial. 32 M.J. at 415. Here, there is no evidence that the witness signed the statement or attested to the statement's accuracy. Thus, the government failed to satisfy the third prong of Mil. R. Evid. 803(5). *Mornan*, 413 F.3d at 377. We therefore conclude the statement is not admissible and that the military judge erred in allowing Officer Kiesel to read portions of his report into evidence.

While not all evidentiary errors warrant reversal, the government, by not arguing in the alternative, appears to concede the prejudice of this particular error by not responding to appellant's argument that this error was not harmless. Indeed, with respect to Specifications 1, 2, 3, and 4 of Additional Charge I, the only evidence appellant assaulted VL derived from Officer Kiesel's report. Without that evidence, these convictions cannot stand.

### B. Factual Sufficiency – Offenses Involving DE

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses" we are "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Article 66(c), UCMJ, provides this court may "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." When exercising this authority, this court does not give deference to the decisions of the trial court (such as a finding of guilty). *United States v. Washington*, 57 M.J. 394,

399 (C.A.A.F. 2002) (A court of criminal appeals gives "no deference to the decision of the trial court" except for the "admonition . . . to take into account the fact that the trial court saw and heard the witnesses.").

We note the degree to which we "recognize or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue." *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015), *aff'd on other grounds*, 76 M.J. 224 (C.A.A.F. 2017).

Recognizing the trier of fact saw and heard the witnesses, we credit DE's version of events. *See also*, *United States v. Crews*, ARMY 20130766, 2016 CCA LEXIS 127, at *11-12 (Army Ct. Crim. App. 29 Feb. 2016), *aff'd,* 75 M.J. 369 (C.A.A.F. 2016) ("The deference given to the trial court's ability to see and hear the witnesses and evidence—or 'recogni[tion]' as phrased in Article 66, UCMJ—reflects an appreciation that much is lost when the testimony of live witnesses is converted into the plain text of a trial transcript."). DE's testimony was very detailed and credible.

DE's testimony was supported by, among other things, the testimony of other witnesses, at least one of whom corroborated that appellant sent her a photograph of DE bound with duct tape. DE had immediately reported appellant had raped her and was recorded on her 911 call. DE's testimony was further corroborated by the forensic examination that revealed evidence of physical injuries and the physical evidence collected at their home after the assault. This evidence included the picture of DE partially stripped and bound in duct tape, a roll of duct tape, used strands of duct tape, vibrators, lubricant, a burned computer, and the clothing DE wore before the assault.

Notwithstanding the credit we give to DE's version of events, the evidence still has to support the charging language. With respect to some of the language in Specification 6 of Charge I, the record of trial is completely silent.

Specification 6 of Charge I reads as follows:

> [In that appellant] [d]id on or about 18 September 2015, at or near Fort Bliss, Texas, commit a sexual act upon Ms. [D.E.], to wit: penetrating her mouth with his penis, by unlawful force to wit: grabbing her head with his hands.

While we find there was sufficient evidence to prove appellant committed the sexual act by unlawful force, there is no evidence that he did so by "grabbing her head with his hands." Therefore, we will strike that language in our decretal paragraph.

10

## CONCLUSION

Specification 6 of Charge I, excepting the words "to wit: grabbing her head with his hands," is AFFIRMED. The findings of guilty as to Additional Charge I and its specifications are SET ASIDE. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

In evaluating the *Winckelmann* factors, we first find no change in the penalty landscape that might cause us pause in reassessing appellant's sentence, as the potential maximum sentence to confinement remains life, a sentence far greater than that which the military judge imposed. Second, we note appellant elected to be tried by a military judge sitting alone. We are confident the sentence to confinement would have extended to at least twenty-two years had the factfinder found appellant not guilty of the Specifications of Additional Charge 1. Third, we find the remaining offenses capture the gravamen of appellant's criminal conduct. Finally, based on our experience as judges on this court, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

Having conducted this reassessment, we AFFIRM only so much of the sentence as provides for a dishonorable discharge, confinement for twenty-two years, and reduction to E-1.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

11